LAU WONG SHEE *v.* DAVID R. OWENS, WILLIAM E. MILES, BERNARD FROISETH, HERBERT F. CULLEN, Y. ZANE, LAWRENCE M. JUDD, PHILIP CANALES, ESTEBAN MOKIKOT, PRIMITINO DOSUGO, SALVADOR BANYAS, MARCELA CALDERON, MONTY ROQUE, R. RODRIQUS, PASTOR P. LARBAYAN, DALTON LEE ROSE, LUCIO LUMIO, FEDERICO BALUCAN, SALVADOR ALOYA, TOMAS RAMOS, IGNOCIO TOLENTINO, MODESTO LUAT, CONTRADO RICO, ALFONZO LUBRIN, PABLO GUEWARA, F. B. TABANAS, EDWARD U. BERDON, PACIANO CABABAG, SIXTO RAVELO, JOSE REYES, ELIDORA CABELLON, C. PASCUAL, BERNABE PAGHARION, PIO PIGAS, ANTONIO CAPAROSO, CASEMERO CANEONERO, SEBARO PAN, DIOSCORO BONTE, GREGORIA ANCHETA, AND MACELINO DOMINGO.

NO. 2604.

ARGUED MARCH 10, 28, 1947.          DECIDED APRIL 10, 1947.

KEMP, C. J., PETERS AND LE BARON, JJ.

494

This is a proceeding initiated by a landlord before the Rent Control Commission of the City and County of Honolulu pursuant to section 4 of ordinance 941, as amended, of the ordinances of the City and County of Honolulu, for the adjustment of the maximum-rent ceiling applicable to her housing accommodations.

Under the provisions of section 3 (a) of the ordinance, maximum-rent ceilings of housing accommodations rented on May 27, 1941, were fixed at the rental that landlords were entitled to receive on that date, subject to such adjustments as might be made pursuant to the provisions of section 4 of the ordinance. The Rent Control Commission was authorized, under section 4 of the ordinance, to adjust maximum-rent ceilings affecting housing accommodations in the case of (a) "peculiar circumstances"; and (b) (1) "a substantial rise, since May 27, 1941, in taxes or other maintenance or operating costs or expenses"; or (b) (2) "a substantial capital improvement or alteration made since May 27, 1941." Where adjustment is prayed upon the ground of "peculiar circumstances" under the provisions of section 4 (a) of the ordinance, the measure of adjustment is: "the rent generally prevailing for comparable housing accommodations as determined by the commission." Where, however, the grounds of adjustment are (a) "a substantial rise, since May 27, 1941, in taxes or other maintenance or operating costs or expenses," or (b) "a substantial capital improvement or alteration made since May 27, 1941," under the provisions of section 4 (b) of the ordinance, the measure of adjustment is compensation subject to the limitation that the adjustment shall not "permit the receipt of rent in excess of that generally prevailing for comparable housing accommodations as determined by the commission." The pertinent portions of sec-

tion 4 of the ordinance are quoted in the margin.[1]

In her petitions for adjustment the landlord alleged as grounds therefor, (a) the increase since May 27, 1941 in taxes and other maintenance and operating costs, (b) vacancy of the housing accommodations involved and resulting loss of income, and (c) the expenditure of a large sum of money in improvements. In her petition for re-

---

[1] "(a) Any landlord or tenant may petition the commission to adjust the maximum-rent ceiling applicable to his housing accommodations on the ground that such maximum-rent ceiling is, due to peculiar circumstances affecting such housing accommodations, substantially higher or lower than the rent generally prevailing for comparable housing accommodations; whereupon the commission may by order adjust said rent ceiling to provide the rent generally prevailing for comparable housing accommodations as determined by the commission.

"For the purposes of this subsection the term 'peculiar circumstances', without prejudice to the generality of the term, includes such circumstances as the following: (1) that a raise or raises in rent made by the landlord prior to May 27, 1941, for his similar housing accommodations were withheld as to the particular housing accommodations in order to allow a tenant or tenants who were in occupation before such raise to continue at the former rate; (2) that the prevailing rent was not charged the tenant who was in occupation on May 27, 1941, because of the family relationship between the landlord and the tenant or because the tenant was in the employ of the landlord; (3) that a lower rental was charged the tenant on May 27, 1941, in consideration of his having been a tenant for a long period of time; (4) that there are at the time of hearing on the petition more occupants in the particular housing accommodations than there were on May 27, 1941.

"(b) Any landlord may petition the commission to adjust the maximum-rent ceiling or minimum-service standard, or both, applicable to his housing accommodations to compensate for (1) a substantial rise, since May 27, 1941, in taxes or other maintenance or operating costs or expenses, or (2) a substantial capital improvement or alteration made since May 27, 1941; whereupon the commission may by order adjust such maximum-rent ceiling or minimum-service standard in such manner or amount as it deems proper to compensate therefor, in whole or in part, if it finds such adjustment necessary to carry out the purposes of this ordinance; provided, however, that no such adjustment in maximum-rent ceiling or minimum-service standard shall permit the receipt of rent in excess of that generally prevailing for comparable housing accommodations as determined by the commission."

view by the circuit court of the orders of the Rent Control Commission she repeated these grounds of adjustment, identifying the cause of vacancy and characterizing the expenditure for improvements as "large capital investment."

It is undisputed that the housing accommodations involved were rented on May 27, 1941; that they were vacant as a result of an order of evacuation enforced by United States military authority from December, 1941, to November, 1943, a continuous period of twenty-two months; that since May 27, 1941, there has been a substantial rise in taxes and other maintenance and operating costs and expenses and that the housing accommodations involved, due to the enforced vacancy, fell into disrepair necessitating substantial improvements to restore them to the condition in which they were on May 27, 1941, in some instances the material used and the fixtures installed being superior to those replaced and in other instances additions to what theretofore existed.

The circuit judge, sitting as a court, jury waived, held that the facts constituted "peculiar circumstances" affecting the landlord's housing accommodations within the meaning of that phrase as employed in section 4 (a) of the ordinance, as amended; that the measure of adjustment of the maximum-rent ceiling applicable to the housing accommodations involved was the rent generally prevailing for comparable housing accommodations; found the facts of comparability and of the maximum-rent ceilings applicable to other comparable housing accommodations and fixed the minimum maximum-rent ceiling of the housing accommodations involved indicating the applicable per cent of increase where variations existed.

Certain of the defendants' exceptions to the decision of the circuit court challenge the findings of the court both of law and fact, one the propriety of the court fixing the

minimum-rent ceiling applicable to the housing accommodations involved and the percentages of increase in the case of variations. These exceptions must be sustained. The petitioner failed to show "peculiar circumstances" affecting the housing accommodations involved within the meaning of that term as employed in section 4 (a) of the ordinance entitling her to adjustment of said rent ceiling to provide the rent generally prevailing for comparable accommodations as determined by the commission. She did, however, show a substantial rise since May 27, 1941, in taxes or other maintenance or operating costs or expenses and was entitled, under the provisions of section 4 (b) of the ordinance, to adjustment of said rent ceiling to compensate her therefor in such manner and amount as the court might deem proper, in whole or in part, accordingly as it found such adjustment necessary to carry out the purposes of the ordinance, not to exceed, however, the rent generally prevailing for comparable housing accommodations as determined by the commission. The petitioner also showed substantial improvements and alterations made since May 27, 1941, but failed to show that they were capital improvements as distinguished from repairs. Inasmuch, however, as this distinction was unnecessary if, as held by the circuit court, the improvements or alterations made since May 27, 1941 were included in the "peculiar circumstances" adopted by the circuit court as the basis of its decision, petitioner upon remand to the circuit court should be afforded an opportunity of showing, if she can, what, if any, of the improvements or alterations made were "capital" as that term is used in section 4 (b) of the ordinance. Moreover, the determination by the circuit court of the minimum maximum-rent ceiling applicable to the housing accommodations involved and the percentages applicable to variations was unauthorized

and constituted a usurpation of the functions of the Rent Control Commission.

First, as to whether the facts constitute "peculiar circumstances" within the meaning of that term as employed in section 4 (a) of the ordinance. The landlord contends that the adjective "peculiar" is synonymous with the word "unusual" or with other words of similar import and that the enforced vacancy, resulting in the necessity of extensive repairs to restore the premises to a tenantable condition, the high cost and scarcity of labor and building material in 1943, when the improvements were made, and the substantial rise in taxes or other maintenance or operating costs or expenses combined to create a situation unusual or peculiar in its effect upon the rental to which the landlord was entitled for the housing accommodations involved.

Unquestionably the circumstances were unusual. But were they unusual in the sense of being "peculiar" as the latter term is used in section 4 (a) of the ordinance, requiring adjustment measured by the rent prevailing for comparable accommodations? In our opinion the examples of peculiar circumstances illustrating the meaning attributable to the term and the correlated terms and provisions of the ordinance furnish the answer.

The examples given in section 4 (a) of the ordinance, illustrating the sense in which the term "peculiar circumstances" is employed therein, imply causes of inequality of rentals inherent in the legal relation of landlord and tenant subsisting on May 27, 1941, or in the year preceding, the fair measure of the adjustment of which would be the rent generally prevailing for comparable housing accommodations. The effect of the adjustment would be to correct, on an equitable basis, an existing unfair rental which under the terms of the ordinance the landlord is powerless to correct.

Our conclusions are confirmed by the legislative intent declared in section 11 of the ordinance, the provisions of the ordinance calculated to give effect to such intent and the alternative measures of adjustment authorized by section 4 of the ordinance accordingly as the facts are governed by the provisions of section 4 (a) or section 4 (b).

Section 11 of the ordinance declared the existence of a public emergency because of the national emergency and the national defense program; the presence of large numbers of armed forces and personnel of the United States and civilian workers upon defense projects aggravating the congested situation with regard to housing accommodations in the City and County of Honolulu, making it increasingly difficult for persons whose duties and obligations required them to live in our community as well as local and permanent residents to obtain such accommodations at a fair rate of rental. The board of supervisors declared in conclusion that housing accommodations must be regulated and controlled so as to prevent speculative and manipulative practices by landlords, while at the same time allowing them a fair return on the value of their housing accommodations.

By section 3 of the ordinance it is provided that immediately following the enactment of the ordinance, subject to such adjustments as might be made pursuant to the provisions of section 4, maximum-rent ceilings and minimum-service standards for housing accommodations in the City and County of Honolulu should be accordingly as they were: (a) rented on May 27, 1941, (b) not rented on May 27, 1941, but which had been rented within the year ending on that date, and (c) not rented on May 27, 1941, nor within the preceding twelve months. In the case of (a) the rental was fixed at the amount the landlord was entitled to receive on May 27, 1941, and in instance (b) the amount that the landlord was entitled to

receive within the year. In the case of (c) the measure of rent was the rent prevailing for comparable housing accommodations as determined by the commission. May 27, 1941, and the year next preceding, were evidently adopted as periods of conceded normalcy and the effect of the provisions of 3 (a) and 3 (b) was to apply the rent of conceded normalcy to subsequent abnormality. The result is that in the absence of grounds for adjustment enumerated in section 4 the same rent continued under the provisions of section 3 (a) and 3 (b) indefinitely for the life of the ordinance or as long at least as the emergency which motivated and justified its passage existed irrespective of whether the rent was higher or lower than rents obtaining for comparable housing accommodations. It is conceivable that in specific instances the rents under normal conditions were, on May 27, 1941, and in the year next thereto preceding, lower than that generally prevailing for comparable housing accommodations. In such instances under the provisions of the ordinance the maximum-rent ceiling nevertheless remained the same. Hence it is that in the case of the existence of peculiar circumstances the measure of adjustment is the maximum-rent ceiling of comparable housing accommodations and in the cases of substantial rise in taxes or other maintenance or operating costs or expenses or a substantial capital improvement or alteration made since May 27, 1941, the measure is compensation. It is further conceivable that under the provisions of section 4 (b) of the ordinance while the landlord might be entitled to compensation upon either grounds, the adjustment being limited to compensation, the resulting adjustment might not equal the rent obtaining for comparable housing accommodations. If the rent as fixed on May 27, 1941, or within the preceding year, were lower than the rent prevailing for comparable housing accommodations it could not, in the absence of

peculiar circumstances, be increased except as it might be increased by way of compensation. The reference in section 4 (b) of the ordinance to the rent generally prevailing for comparable housing accommodations is not a measure of but a limitation upon the rent as adjusted.

Lastly, what control if any may circuit courts exercise over the final orders of the Rent Control Commission? Petitions for review by circuit courts of orders of the Rent Control Commission and the powers of the circuit court upon the hearing thereof, including the final disposition of the cause after determination, are governed by Revised Laws of Hawaii 1945, section 9658, the pertinent portions of which are quoted in the margin.[2] The requirement that the petition state the grounds of review is tantamount to a limitation upon the scope of the hearing in the circuit court and the confinement of the issues of law and fact before the circuit court to the questions of law and fact presented by the grounds of review alleged in the petition.

---

[2] "The petition for review need not be verified but shall state the grounds upon which such review is sought. * * *

"The hearing before the court shall be a hearing de novo, and each party shall have the right to introduce evidence, or the court may, of its own motion, require the taking of such evidence as the court may deem proper. The court shall determine all questions of fact and all questions of law involved in the appeal; provided that in all appeal cases in which a trial by jury is had the cause shall be submitted to the jury on questions of fact stated to them by the court pursuant to section 10127. The right of trial by jury shall be deemed to be waived unless claimed within ten days from the date the appeal is perfected.

"The court may affirm or reverse such order or determination, and may modify such order or determination by partially affirming and partially reversing the same, but may not otherwise modify the same or enter a new or different order or determination. If the court shall reverse such order or determination it shall render its decision setting forth wherein such order or determination is erroneous, together with such rules of law, and such findings of fact by the court or the jury, as the case may be, as will enable a proper order or determination to be entered."

502

Moreover, the functions of the court sitting either with or without a jury are confined to finding the facts and the law applicable thereto within the issues raised by the petition for review.

The powers of the court of disposition of the cause after determination are extremely limited. While it may reverse and modify, etc., it may not enter any new or different orders. That is the function of the commission upon remand, consistently with the findings of the circuit court.

Although the rent prevailing for comparable housing accommodations was an issue of fact, irrespective of whether the provisions of section 4 (a) or of section 4 (b) apply, and it might be said the fixing of the minimum and the percentages applicable to variations were consistent with findings to that effect, the language of the court is in the form of a directive and in that form is contrary to the provisions of the statute.

The cause is remanded accordingly to the circuit court for further proceedings consistently herewith.

*F. Schnack* for petitioner.

*B. Houston* for respondents.