# IN THE MATTER OF THE PETITION OF COSMOPOLITAN HOTEL, BY M. C. SCOBY, FOR A REVIEW OF RATES.

## NO. 2628.

ARGUED OCTOBER 23, 1947.          DECIDED NOVEMBER 24, 1947.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

This is a special proceeding, initiated by a landlord.

It pertains to emergency rent control for housing accommodations within the city and county of Honolulu, and involves a complaint by the landlord against the order of the rent control commission establishing maximum-rent ceilings and minimum-service standards for the landlord's housing accommodations.

On May 23, 1944, the landlord petitioned the commission to establish ceilings and standards on its housing accommodations pursuant to section 3, (c), of ordinance number 941 of the city and county of Honolulu, such accommodations having been formerly an old church building, parish house and caretaker's cottage which, as one project, had been extensively altered and remodeled into a hotel some time during the year 1944 and shortly prior to May 23, 1944, and not rented as housing accommodations on May 27, 1941, or within the preceding twelve months. On July 14, 1944, the commission, after a hearing of the petition, determined the rent and service generally prevailing for comparable accommodations, affirmed a previous and identical determination of the rent control administrator and ordered that maximum-rent ceilings and minimum-service standards for the landlord's housing accommodations be set at the rent and service determined for comparable housing accommodations. On August 1, 1944, the landlord petitioned the circuit court for a judicial review of the commission's order, the sole ground of complaint being that the ceilings and standards fixed thereby are unfair and unjust. On that date no amendments to section 3, (c), *supra*, pertinent to the landlord's case had been enacted, but one had before its petition was heard by the circuit court. It is the amendment of June 16, 1945. (Ord. No. 1026.) At the hearing *de novo* on March 14, 1946, before the circuit court, the landlord did not purport to show the generally prevailing rent and service for com-

parable accommodations, nor dispute the evidence upon which the commission made its determination thereof. It relied upon evidence of an approval by the Federal Housing Administration, to which the rent control administrator assented, of rates of rent for the accommodations on approximate cost upon the securing by it of priority rating from the War Production Board to alter and remodel its existing buildings. It further relied upon evidence of actual cost of alteration, remodeling and operation. This evidence showed that the rates approved by the federal agency are higher than the ceilings set by the commission and tended to prove that the return under such ceilings is small, if not a loss, and that the ceilings and standards set by the commission are confiscatory.

The commission objected to the landlord's evidence, but did not dispute it. The commission introduced evidence of comparability of the landlord's with other housing accommodations and a resume of the conditions upon which it determined rent and service generally prevailing for comparable housing accommodations. This evidence proved that the commission inspected the landlord's housing accommodations and others of similar character and type, considered rents and services to which the landlords and tenants of those similar accommodations were entitled, made proper allowances for points of differences between them and those of the landlord, including the more favorable location of the landlord's and their newness and freshness due to the recent alteration and remodeling, and after such allowance fixed for the landlord's housing accommodations maximum-rent ceilings higher than those existing for the similar accommodations.

After the hearing, the circuit court by written decision on May 16, 1946, and supplemental one of June 14, 1946, made findings to the effect that the landlord, before peti-

tioning the commission, had petitioned the War Production Board for permission to raze the old church and erect a new building on the same site and alter substantially the other two so that the three together would comprise and be operated as a hotel; that the old church building was "practically worthless as a structure"; that the War Production Board refused to allow the church to be razed because of war conditions and shortage of materials; that permission was granted by such Board to "practically rebuild the church into a hotel" and to alter structurally the design of the parish house and cottage so as to be parts of such hotel; that the Federal Housing Administration approved rates of rent therefor to which the rent control administrator acquiesced and that such approved rates are fair and reasonable. Upon this finding the circuit court applied the amendatory ordinance number 1026 and directed the commission to "fix the maximum-rent ceilings and the minimum-service standards for the Cosmopolitan Hotel in accordance with the rate recommended by the Federal Housing Authority allowing any adjustments in rents and services for which no allowance was made in accordance with section 3-A of ordinance 941." In considering actual cost and expenses, the circuit court in the decisions interpreted section 11 of ordinance number 941 as amended to require the commission to allow the landlord a fair return on the value of its accommodations. It therefore found as a matter of law that the commission did not sufficiently consider evidence of such value, the court's chief criticism of the commission's order being that the "ceiling set was solely on the basis of 'comparable housing accommodations.'" Upon such opinion, interpretation and findings the decisions reversed the order of the commission and declared it erroneous, the underlying reason as a ground of reversal being that the commission did not

allow the landlord a fair return on the value of its housing accommodations within the meaning of section 11 as interpreted by the circuit court.

The specification of the errors relied upon by the commission runs to the decisions. They challenge the circuit court's interpretation of section 11 of ordinance number 941 as amended and application of the amendatory ordinance number 1026. Consistent with the exceptions to the decisions, they present two abstract questions of law. The first is whether the commission, in determining the rent and service generally prevailing for comparable housing accommodations pursuant to section 3, (c), of ordinance number 941 as amended, is obligated to fix a rental which in fact will yield to the landlord a reasonable return on the value of his housing accommodations, and the second whether the amendatory ordinance applies. This court is mindful of the fact that an affirmative answer to the second question causes any answer to the first to be immaterial. Nevertheless, owing to the importance of the first question to the entire scheme of rent control in Honolulu, it will be considered.

In dealing with that question, section 3 of the ordinance applies to existing housing accommodations rented (a) on May 27, 1941, or (b) within the preceding twelve months, and (c) those not then rented. For such accommodations not then rented subsection (c) provides that " * * * subject to such adjustments as may be made pursuant to the provisions of section 4, maximum-rent ceilings and minimum-service standards * * * shall be * * * the rent and service generally prevailing for comparable housing accommodations as determined by the commission." This clear and unambiguous mandate of the board of supervisors concededly has but one meaning. Such meaning is conclusive unless modified by other sections of the

ordinance, or by the ordinance taken as a whole as the reservoir of legislative intent, irrespective of whether but one part may purport to declare such intent. However, in this case there is no conflict, all parts of the ordinance being in harmony.

Section 11 reads: "Declaration of legislative intent. It is hereby declared that a public emergency exists within the city and county of Honolulu because of the National Emergency and the National Defense Program. The large numbers of armed forces and personnel of the United States and civilian workers upon defense projects have aggravated the congested situation with regard to housing accommodations in the city and county of Honolulu and have made it increasingly difficult for persons whose duties and obligations require them to live in this community, as well as local and permanent residents, to obtain such accommodations at a fair rate of rental. Instances of rent-gouging practices by some landlords have been disclosed and it is the intention of this board that in the interests of National Defense rents charged for housing accommodations must be regulated and controlled so as to prevent speculative and manipulative practices by landlords, while at the same time allowing to the landlords a fair return on the value of their housing accommodations."

Consistent with the reasons for the enactment of the ordinance and evils to be remedied thereby as stated in section 11, the board of supervisors expresses an intention that "rents charged for housing accommodations must be regulated and controlled." The purpose of such regulation is not only "to prevent speculative and manipulative practices by landlords, while at the same time allowing to the landlords a fair return on the value of their housing accommodations" but, by necessary implication from the context of the section, to protect tenants from such prac-

tices so that they may "obtain such accommodations at a fair rate of rental." One purpose is reciprocal of the other and both deal with a mutual relationship. They constitute a general legislative conception of fairness, intrinsic to the methods of rent control prescribed in other sections of the ordinance and inherent to the legislative intent of the ordinance as a whole. This intent is to freeze and roll back rents and services, subject, however, to adjustment, for all existing housing accommodations to those levels which had been worked out by landlords and tenants for themselves by free bargaining in a competitive market before an abnormal demand for such accommodations arose. Thus in section 3, (a) and (b), the common measure of fairness to the landlord and tenant for housing accommodations rented on May 27, 1941, or within the preceding twelve months, is the rent and service to which they were then specifically entitled. Obviously, for ones then unrented, no such particular basic rent and service obtain. Hence section 3, (c), provides therefor an analogous criterion. It is not the basic rent and service to which a landlord and tenant of comparable housing accommodations were entitled, but the rent and service which are generally prevailing therefor. This criterion allows for any interim adjustments of basic rents and services for such comparable housing accommodations and is generally the gauge of adjustment between landlord and tenant pursuant to section 4, (a), and the limit of compensation to the landlord in any upward adjustment pursuant to section 4, (b), (1) and (2). (*Lau Wong Shee* v. *Owens et al.*, 37 Haw. 493.) It is evident therefrom that the ordinance treats all landlords and tenants of existing housing accommodations uniformly from the time of basic rents and services to that of adjustments thereafter, but the common measure of fairness in each case is purely a legislative

operation to accomplish the purposes of the enactment. In the case of housing accommodations under section 3, (c), neither that subsection nor section 11 devises any standard of fairness other than the rent and service generally prevailing for comparable housing accommodations and no other is readily available (see *Wilson* v. *Brown*, 137 F. [2d] 348), the commission's determination thereof automatically affording the landlord that fair return on value, as well as the tenants that fair rate of rent, contemplated by the board of supervisors. Hence such determination constitutes as a matter of law and fact sufficient consideration of both items of fairness, it not being the obligation of the commission to do more under section 3, (c), and 11, nor under any provision of the ordinance or amendment thereof to fix for individual properties a rental which in its opinion will yield a reasonable return on their value. The first abstract question, therefore, is answered in the negative and the exceptions to the circuit court's interpretation of sections 3, (c), and 11, are sustained. But this court does not mean to imply thereby that section 3, (c), applies to the landlord's housing accommodations. Neither does it decide that the section applies to new housing accommodations not existing as such on May 27, 1941, but constructed thereafter, nor, assuming *arguendo* that it does apply thereto under circumstances of substantially greater costs of construction than those which prevailed for comparable housing accommodations, determine that such an application would not be confiscatory contrary to the Fifth Amendment to the Constitution.

Relative to the second question, the legislative purpose of ordinance number 1026 is consistent with federal control over priority-constructed housing accommodations. It is to exclude them from the existing and applicable local

control as prescribed by section 3, (c), of ordinance number 941 and at the same time either to implement federal control therefor or to leave such constructed accommodations entirely under that control. This purpose is effectuated in section 1 by amending ordinance number 941 so that section 3, (c), thereof "shall not apply to housing accommodations constructed with priority rating from the United States or any agency thereof" and in section 2 by further amending the ordinance so that a new section, designated as 3-A, shall apply to such accommodations "for which the rent has been heretofore or is hereafter approved by the United States or any agency thereof." The new section 3-A provides that such approved rent "may be accepted by the Rent Control Commission as the basic rent for such housing accommodations. Provided, however, that the landlord may petition the commission in the manner hereinafter provided for any adjustment in rents or services furnished for which no allowance was made by an authorized agency of the United States at the time of final approval of the rent by that agency." Section 1 having thus by mandate abruptly severed priority-constructed housing accommodations from prescribed local control, section 2 admits federal control therefor by providing a means to implement it and consonant therewith operates to limit the commission to the exercise of but one of two alternatives. One is to accept the federally approved rent as the basic rent for such constructed accommodations and in lieu of adjustment by federal authority to adjust on the landlord's petition any rent and service furnished at the time of petition for which no allowance had been made by the federal agency at the time it approved the rent. The other is to reject the federally approved rent and refuse to entertain any petition for adjustment. By not recognizing such latter al-

ternative course, the circuit court erred in directing the commission after applying the amendatory ordinance. The exception to the lower court's direction to the commission is therefore sustained.

In excluding priority-constructed housing accommodations from the control prescribed in section 3, (c), and in providing a means to implement that initiated by the federal, the board of supervisors did not define the transitive verb "constructed." It is reasonable to infer therefrom that the omission was made advisedly and that the board of supervisors intended to adopt the definition upon which federal control operated. That definition is found in Conservation Order L-41 as amended July 27, 1943 (8 Fed. Reg. 10496), made pursuant to the Second War Powers Act of 1940 and 1942. (54 Stat. 676, am. 55 Stat. 236; 56 Stat. 176.) The order defines the noun "construction" to mean "the erection, construction, reconstruction, restoration, or remodeling of any structure or project or additions thereto or extensions or alterations thereof but not including * * * 'Maintenance and repair' as defined in paragraph (a) (12) * * *," such excluded term so defined being itself exclusive of "any building operation or job where a structural alteration or change in design is to be made." This meaning directed to the object "housing accommodations" within the modifying clause "constructed with priority rating from the United States or any agency thereof" is qualified by the approval-of-rent clause and so qualified expresses the meaning intended by the board of supervisors to effectuate its legislative purpose of implementation, otherwise a conflict would be inevitable. Hence such qualified meaning governs the provision that section 3-A shall not apply to the "alteration or remodeling of an existing structure," the necessary implication being that such quoted phrase does not signify

priority-constructed accommodations to which federal control has attached, but rather deals with existing housing accommodations to which section 3, (c), applies, nor does it designate "a substantial capital improvement or alteration" (Ord. No. 941, § 4, [b], [2]), as involved in *Lau Wong Shee* v. *Owens, supra,* where the elements of priority rating from and approval of rent by federal authority do not appear. In short, exercise of federal rent control over priority-constructed housing accommodations underlies the application of ordinance number 1026.

After the enactment by Congress on January 30, 1942, of the Emergency Price Control Act (56 Stat. 23), rent control for all existing housing accommodations within any particular defense-rental area was the responsibility of the Price Administrator who was authorized to declare and recommend stabilization or reduction of rents therefor and, if not stabilized or reduced in accordance therewith by local regulation within sixty days, empowered to establish maximum rents for such accommodations pursuant to section 2, (b), of the Act. Before such rent control could be invoked within the defense-rental area of the city and county of Honolulu, a correlative one had been inaugurated locally on December 13, 1941, by the enactment of ordinance number 941, which was practically identical in language to the District of Columbia Emergency Rent Act enacted by Congress on December 2, 1941. (55 Stat. 788; D. C. Code 1940, Supp. I, § 45-1601 *et seq.*) Nor to date has it been invoked within that area, the administrator presumably being of the constant judgment that the operation of local rent control is adequate and renders unnecessary exercise of his authority under section 2, (b), *supra.* However, this court is not primarily concerned with such resulting correlation for existing housing accommodations, but rather with the intended

local implementation of exercised federal rent control for those newly constructed with priority rating from the United States or any agency thereof. The responsibility to initiate that control at the time the landlord constructed its housing accommodations lay jointly with the War Production Board, the National Housing Agency and the Federal Housing Administration. These were authorized agencies of the United States, co-ordinated under the Act of December 18, 1941. (55 Stat. 838.) The authority of the War Production Board to permit such construction stemmed from the Second War Powers Act of 1940 and 1942, *supra*. That of the National Housing Agency through the local office of the Federal Housing Administration to approve rent and service and set occupancy standards for such constructed accommodations was contained in National Housing Agency General Order 60-3, Administrator, February 9, 1943, 8 Fed. Reg. 1830. (See Code Fed. Regs. Cum. Supp., tit. 24, c. VII, § 702.11.) It is this rent control, initiated on permission to begin construction, which ordinance number 1026 as amended provides a means to implement in order that the correlation of the local with the federal may be complete.

In the light of the liberal interpretation of the word "constructed" and the fact that the War Production Board and the Federal Housing Administration were authorized agencies of the United States, it is evident from the uncontroverted evidence adduced before the circuit court that the landlord's housing accommodations were not only "constructed with priority rating" from an authorized agency of the United States, but are ones "for which the rent has been heretofore * * * approved" by a co-ordinated agency thereof. In addition, the approval of rent by such agency was a "final approval" within the purview of section 3-A, the agency having made no subsequent approval

and the landlord not having elected to seek one. Hence section 3, (c), does not apply to the landlord's housing accommodations and the new section 3-A was applicable to them at that time. The second question, therefore, is answered in the affirmative and the exceptions to the circuit court's application of ordinance number 1026 are overruled. However, after the making of such application, section 3-A was amended on August 7, 1947, by section 1, (e), of ordinance number 1077, which makes no change in operation but deals exclusively with matters of procedure. Consequently, section 3-A as amended is now applicable, no question of vested rights being involved.

The landlord filed its petition to the commission pursuant to the old section 3, (c). On review, however, it contended that the commission should be directed to proceed in accordance with the new section 3-A, which superseded the old. Such change of position on the part of the landlord was tantamount to a request that the petition be amended to conform to the substituted section, which in effect the circuit court granted by acceding to the landlord's contention. It will be so regarded by this court and deemed to be an exercise of the privilege afforded by the then applicable new section 3-A, the petition's filing date being determinative of any adjustments to be made.

To have such priority-constructed housing accommodations free of the rent control prescribed by section 3, (c), of ordinance number 941 is a substantial property right of the landlord under the mandatory language of section 1 of ordinance number 1026, which operated to vest that right in the landlord. Being a right vested by ordinance, subsequent enactments will not be read as operating retrospectively to destroy or impair it unless the language employed imperatively requires a contrary construction. (See opinion of Kemp, C. J., and Le Baron, J., in the case

of *Estate of Bernice P. Bishop*, 37 Haw. 111, 129, 138.) No such language appears in section 1, (d), of ordinance number 1077, which amends section 3, (c), by placing its inapplication to priority-constructed housing accommodations within the commission's discretion, any exercise thereof which would react prejudicially against a vested right being a clear abuse of that discretion. Nor does it appear in any other section thereof or other subsequent amendment. Hence the right vested by ordinance number 1026 remains unaffected, even though the procedure in making any adjustment in relation to the federally approved rent is controlled by section 1, (e), of ordinance number 1077. (*Estate of Bernice P. Bishop, supra.*)

For the reasons assigned herein the decisions are set aside and the cause remanded below with instructions to enter a new decision reversing the order of the commission and advising the commission consistently with this opinion in order that it may either accept the federally approved rates of rent as the basic rents for the landlord's housing accommodations and make proper adjustments as of the time of petition, pursuant to the new section 3-A as amended by ordinance number 1077, or reject such rates and refuse to entertain the petition for adjustment.

*J. E. Collins* (*Smith, Wild, Beebe & Cades* with him on the brief) for petitioner.

*T. S. Ogata*, Deputy City and County Attorney (also on the briefs), for respondents.